# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| JOSEPH A. LIGOTTI, JR. | ) |
|     Plaintiff | ) |
| v. | ) |
| | ) |
| DALY XXL COMMUNICATIONS, INC.; | ) |
| WMEX RADIO, LLC, d/b/a WMEX 1510; | ) |
| MARY CATHERINE REMMER, individually; | ) |
| BRYAN J. BERNER, individually; | ) |
| HENRY J. REMMER, individually; and | ) |
| KEVIN J. WALLIS, individually | ) |
|     Defendants | ) |

---

## COMPLAINT

NOW COMES the Plaintiff, Joseph A. Ligotti, Jr., by and through his legal counsel, hereby complains against the Defendants as set forth below.

### THE PARTIES

1.    Plaintiff, Joseph A. Ligotti, Jr. ("Ligotti") is an individual residing in Tewksbury, MA.

2.    Defendant Daly XXL Communications, Inc., is a North Carolina Corporation with a registered corporate address of 1117 Futch Creed Road, Wilmington, North Carolina, 28411 and registered in the Commonwealth of Massachusetts as a foreign corporation with a registered local resident agent of Corporation Service Company, 84 State Street, Boston, MA 02109.

3.    Defendant Daly XXL Communications, Inc. owns and operates co-Defendant WMEX Radio, LLC.

4.      Defendant WMEX Radio, LLC is a Massachusetts Limited Liability Company doing business at 308 Victory Road, 3rd Floor, Quincy, Massachusetts 02171, with a resident agent address of Bryan Berner, 308 Victory Road, 3rd Floor, Quincy, Massachusetts 02171, and it is a subsidiary of Co-Defendant Daly XXL Communications, Inc.

5.      Defendant WMEX Radio, LLC is also known as WMEX 1510 and does business as WMEX 1510.

6.      Mary Catherine Remmer in an individual who resides at 1117 Futch Creek Road, Wilmington NC 28411, and is an owner or officer of the Co-Defendant companies.

7.      Bryan J. Berner is a manager who resides at 198 Bay E. 28th Street Apt. 3, Brooklyn, NY 11214 and is an owner or officer of the Co-Defendant companies.

8.      Henry J. Remmer is an individual who resides at 1117 Futch Creek Road, Wilmington, NC 28411 and is an owner or officer of the Co-Defendant companies.

9.      Kevin J. Wallis is an individual who resides at 611 Route 46, West Hasbrouck Heights, NJ 07604 and is an owner or officer of the Co-Defendant companies.

## JURISDICTION

10.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining claims because this action arises under the trademark laws of the United States, Title 15, United States Code, and because the remaining counts have a common nucleus of operative facts with the counts arising under trademark.

11. This Court has personal jurisdiction over the Defendants because, among other reasons, they conduct business in Massachusetts or the acts that form the basis of the complaint took place in Massachusetts.

12. Venue is proper in this District under 28 U.S.C § 1391 and 28 U.S.C. § 1400(a) because: (a) a substantial part of the events or omissions giving rise to the claims occurred in this District; (b) a substantial part of the property that is the subject of this action is situated in this District; or (c) on or more of the Defendants are subject to personal jurisdiction in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

13. Plaintiff, Joseph A. Ligotti, Jr., is a recognized radio and internet personality also known as "The Guy From Boston."

14. Ligotti has common law rights the mark THE GUY FROM BOSTON.

15. Ligotti is a recognized television and radio personality in and around the Boston area and across the country. Locally, he has appeared on FOX 25, was the host on the "Joe and Huggy Show" on WTKK from approximately May 2008 until July 2010, and subsequently, the host for the "Joe Ligotti Show," which aired from approximately July 2010 until December 2013.

16. Ligotti also appeared nationally via his Internet postings, The Neil Cavuto Show and Fox and Friends, both on the Fox News Channel, and on the Tonight Show with Jay Leno.

17. "The Guy from Boston" is known for being, among other things, an outspoken personality on the Internet and elsewhere, and for having a particular style of delivery. *See e.g., Ligotti v. Garofalo*, 562 F. Supp. 2d 204, 213 (D.N.H. 2008). He also has a distinctive look and entertainment style.

18.     1510 WMEX is a federally regulated radio station operating on the public radio broadcasts under channel 1510AM and is regulated by the Federal Communications Corporation (FCC).

19.     On or about May 10, 2015, Defendants contracted Ligotti to act as the "morning drive" host on Defendants' radio station 1510 WMEX. A copy of Defendants' contract with Ligotti is attached hereto as Exhibit A (the "Contract").[1]

20.     Defendants contracted with Ligotti specifically in order to boost ratings for their morning show because of Ligotti's regional and national fame, his entertainment style, and his personality.

21.     Ligotti maintained in the past certain and several advantageous business contracts and relations with various venders, customers, supporters, advertisers, media outlets, and listeners including but not limited to Fox News Channel; Fox Business Network; and Fox 25 Boston; and the shows *Fox & Friends, Your World with Neil Cavuto, The Cavuto Show; Cavuto Coast to Coast, Fox Show Risk & Rewards, Mornings with Maria, The Eric Bolling Show*.

22.     On information and belief, Defendants were planning to sell the radio station and needed to increase their market share and revenues so as to increase the value of the station.

23.     Pursuant to the Contract, Defendants agreed to pay Ligotti $70,000 per year guaranteed for the first year, with two (2) additional option years.

24.     Defendants also agreed to pay Ligotti commissions on advertising and marketing, as well as other incentives and payments for additional services.

25.     Defendants advertised the "morning drive" show using, among other things, Ligotti's trademark THE GUY FROM BOSTON and his image and likeness.

---

[1] A scrivener's error denotes the Plaintiff as "Joseph A. Ligotti" without reference to his "Jr." status.

26.     During contract negotiations, Defendants were clear that they sought to hire Ligotti to host in his style, as he had done on the Internet, on Fox News, on his radio shows, and elsewhere.

27.     Defendants did not discuss with Ligotti specific restrictions on his entertainment style, or that there were specific phrases or words he could not use during his show or otherwise.

28.     Ligotti's producer for the show was Tom Quinlan.

29.     While they worked together, Mr. Quinlan appeared to have animosity towards Ligotti and intentionally tried to interfere or hamper Ligotti's on-air performance.

30.     Ligotti reported the working problems between himself and Quinlan to the general manager, Bryan Berner on several occasions, and asked for a new producer so that the show would succeed. Mr. Berner, however, ignored Ligotti's request to change producers.

31.     Instead, on or about July 10, 2015, approximately two months after hiring him, Defendants terminated Ligotti.

32.     Defendants later notified Ligotti he was not terminated, but rather that the matter would be further reviewed with "upper management".

33.     Defendants then notified Ligotti he was temporarily suspended.

34.     Approximately one (1) week later, Defendants terminated Ligotti without notice.

35.     Beginning on or about July 10, 2015 Defendants published both written and verbal false and untrue statements regarding Ligotti.

36.     Specifically, Defendants made, *inter alia,* the following false statements or misrepresentations regarding Ligotti and his association with the station:

        a)  That Ligotti was employed or affiliated with the Defendants after Defendants terminated his employment;

b)  That Ligotti was on medical leave or vacation after the Defendants terminated his employment;

c)  Responding to public inquiry about Ligotti's absence from the airwaves in a manner that implied that Ligotti was still employed or affiliated with the Stations;

d)  Responding or communicating with advertisers and customers that Ligotti remained affiliated with the Station after his employment was terminated, in order to continue to collect advertising revenue;

e)  Publishing billboard advertisements indicating Ligotti was employed or affiliated with the Defendants after his termination;

f)  Publishing newspaper advertisements and other media publications that listed Ligotti as employed or affiliated with the Defendants after his termination;

g)  Publishing Defendants' website or internet presence that included Ligotti as employed or affiliated with the Defendants after his termination.

h)  Made entries in Ligotti's employment files and statements to others that Ligotti engaged in sexual harassment;

i)  Making entries in Ligotti's employment files and made statements to others that Ligotti abused, harassed, or otherwise misused interns and volunteers.

37.  Despite terminating Ligotti, Defendants continued to advertise the "morning drive" using the mark THE GUY FROM BOSTON.

38.  They also continued to advertise the "morning drive" using Ligotti's image and likeness.

39.     On information and belief, Defendants intentionally used Ligotti's mark, name and image and likeness in an effort to encourage consumers to tune into the show and to boost market share.

## COUNT I
### (Federal and Common Law Trademark Infringement)

40.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

41.     Ligotti owns and enjoys common law rights throughout the United States in and to THE GUY FROM BOSTON mark in connection with entertainment services.

42.     Ligotti has continuously used THE GUY FROM BOSTON mark in interstate commerce since at least 2006 either solely or incorporated as part of his name, and his rights to the mark, are superior to any rights Defendants may claim.

43.     Ligotti's rights are protected under 15 U.S.C. § 1125(a) and common law.

44.     Defendants' unauthorized use of THE GUY FROM BOSTON in connection with other radio hosts or its "Morning Drive" show was and is likely to cause confusion, mistake or deception among consumers and constitutes trademark infringement in violation of Ligotti's rights at common law and in violation of 15 U.S.C. § 1125(a).

45.     These wrongful acts have proximately caused irreparable injury to Ligotti, including dilution of goodwill, confusion to the public, injury to Ligotti's reputation and diminution in the value of THE GUY FROM BOSTON mark.

46.     Ligotti is entitled to, among other things, damages and other relief as a result of Defendants' wrongful acts.

## COUNT II
### (Unfair Competition in Violation of 15 U.S.C. § 1125)

47.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

48.     By committing the acts herein alleged, including Defendants' wrongful use of the mark THE GUY FROM BOSTON, Defendants are guilty of unfair competition, deceptive advertising and unfair trade practices, in violation of 15 U.S.C. § 1125(a).

49.     As a result of their wrongful acts, Defendants have caused Ligotti damages and loss of profits. He is entitled to damages, including multiple damages and costs, for those wrongful and intentional acts.

## COUNT III
### (False Designations of Origin and False Representations)

50.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

51.     Defendants' actions constitute false designations of origin and false representations that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Ligotti's services and those of the Defendants.

52.     Ligotti has no control over the nature or quality of Defendants' services. Any failure by Defendants to provide quality services will reflect adversely on him as to the believed services of origin thereof and will hamper efforts by Ligotti to protect its goodwill and reputation.

53.     Pursuant to 15 USC §§ 1116, 1117 and 1125, Ligotti is entitled to injunctive relief, damages, lost profits, attorneys' fees, and other remedies as provided therein.

## COUNT IV
### (State Trademark Dilution Under Massachusetts General Laws Chapter 110H, § 13)

54.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

55.     The mark THE GUY FROM BOSTON trademark is a strong and distinctive mark.

56.     Defendants used the mark in connection with their radio programs in an effort to increase their audience and revenues.

57.     Advertising that a show includes THE GUY FROM BOSTON when none of its hosts include Ligotti constitutes false advertising that dilutes and is likely to dilute the distinctiveness of THE GUY FROM BOSTON mark by creating actual or potential confusion about who radio personalities are, and tarnishes and degrades the ability of THE GUY FROM BOSTON to serve as an identifier for Ligotti and otherwise diminishes the reputation and capacity of THE GUY FROM BOSTON mark to identify and distinguish Ligotti's services.

58.     As a direct and proximate result of the Defendants' conduct, Ligotti has suffered and will continue to suffer damages and irreparable injury, including without limitation, the dilution of the distinctiveness and value of the distinctive THE GUY FROM BOSTON mark and the lessening of its goodwill.

## COUNT V
### (Violation Of Federal Employment Laws—Failure To Maintain Statutory Disclosures & Employee Notices Against Defendants Daly XXL Communications, LLC & WMEX Radio, Inc.)

59.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

60.     Pursuant to the Federal law as codified under 29 CFR 825.300 - Employer notice, the Defendants Daly XXL and WMEX Radio are required to provide certain employment notices to their employees (the "Required Notices"), including Ligotti.

61.     The Required Notices must be posted in employee accessible area giving notification of the Equal Employment Opportunity Law (EEO), the Family and Medical Leave Act (FMLA), and Employee Polygraph Protection Act (EPPA).

62.     By failing to provide these mandatory notices to Ligotti, Defendants, among other things, interfered with, restrained, or denied Ligotti's FMLA rights.

63.    Pursuant to 29 CFR §825.400(c), Defendants are liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.

64.    Ligotti has suffered damages including loss of compensation and benefits as a result of the Defendants' failure to provide the required employer notices.

## COUNT VI
### (Massachusetts Wage Act Violation – MGL c. 149 et. seq. Against All Defendants)

65.    Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

66.    Massachusetts General Laws (MGL) Chapter 149 controls all employment contracts or other employment relationships in the Commonwealth of Massachusetts.

67.    MGL c. 149, §148 requires all employers to compensate an employee immediately upon the date of termination all compensation earned or contractually due to the employee.

68.    MGL c. 149, §150 requires a violating employer to compensate the employee immediately for any and all violations of the Wage Act and pay additional compensation in treble (3x) as penalty.

69.    MGL c. 149, §150 requires the employer to pay to the employee all attorneys' fees and costs when determined to have violated MGL c. 149 the Massachusetts Wage Act.

70.    Under the Wage Act, officers and managers of Defendant Company's such as Daly XXL Communications, LLC and WMEX Radio, Inc. may be held personally and individually liable for unpaid wages.

71.    On July 10, 2015, the Defendants terminated Ligotti.

72.     On the date of termination, Defendants did not pay Ligotti all compensation, bonuses, sick time, vacation time, and commissions due to the employee pursuant to the written contract.

73.     Defendants have since paid Ligotti additional compensation, but have not fully compensated him as required.

74.     Additional compensation is due to Ligotti pursuant to the written employment contract including but not limited to:

a)  Remaining contractual compensation for the First Contract year which required a full contract payment of $70,000.00

b)  Remaining contractual compensation for the Second contract year of $70,000.00.

c)  Remaining contractual compensation for the Third contract year of $70,000.00.

d)  Remaining commissions due to Ligotti from any and all advertisers, vendors, or customers who Ligotti introduced to the Defendants, regardless of whether actually retained during his employment;

e)  Remaining benefits payable to Ligotti, including but not limited to vacation and sick time for the remainder of Contract year one, Contract year two, and Contract year three;

f)  Health, dental, and vision insurance benefits provided to Ligotti pursuant to his employment contract for contract year one, contract year two, and contract year three;

g) Royalties on any use of Ligotti or his trademarks in any forum as used by the Defendants or their affiliates, including all advertising revenue derived from such unauthorized uses;

h) Interest at the statutory rate of twelve (12%) percent per annum on any and all unpaid compensation, commissions, and benefits;

i) Statutory penalties of treble damages for unpaid employment compensation;

j) Statutory attorneys' fees and costs incurred to collect Ligotti's unpaid employment compensation, commissions, and benefits.

75.     Ligotti has incurred financial losses and continues to suffer financial losses as a result of the Defendants' failure or refusal to comply with MGL c. 149.

76.     Ligotti has also incurred attorneys' fees and costs, and will continue to accrue such costs as a result of the unpaid wages and this litigation to collect the same.

77.     Prior to instituting this private action for unpaid wages, the Plaintiff has complained to the Commonwealth of Massachusetts Office of the Attorney General (hereinafter "Attorney General"), and on September 15, 2015, the Attorney General authorized this private right of action to recover unpaid wages under MGL c.149, §§148, 150. (See attached **Exhibit "B"** for a copy of said authorization).

## COUNT VII
### (Failure to Produce Employee Records – MGL c. 149, §52C—Against All Defendants)

78.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

79.     Pursuant to MGL c. 149, §52C, an Employer must maintain certain information within an employee file and must provide the employee or his legal counsel with a full and

complete copy of the employee's complete file as maintained by the employer within five (5) days of receiving the employee's written request.

80.     On or about July 22, 2015, Ligotti made a written request upon the Defendants pursuant to MGL c.149, §52C for a full and complete copy of his employee file. (See attached as **Exhibit "C"** is a copy of that request.

81.     Defendants failed to produce a full and complete copy of the Plaintiff Employee file within the requisite time.

82.     Defendants failed or otherwise refused to comply with MGL c. 149, §52C and therefore are liable to the Ligotti for damages as proscribed thereunder MGL c.149, §52C and §150, including but not limited to costs and fees.


### COUNT VIII
**(Violation Of Massachusetts Employment Act – MGL c. 149 Failure To Maintain Statutory Disclosures & Employee Notices—Against All Defendants)**

83.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

84.     Pursuant to MGL c. 149, an Employer must provide any and all employees with certain documents upon employment, including but not limited to a written employee handbook, any and all policies governing the employee, and federally and state mandated disclosures;

85.     Defendants violated MGL c. 149, by failing or otherwise refusing to provide Ligotti with said required employment documents including but not limited to an employee handbook, federal and state required disclosures, worker's compensation statements, discrimination statements, sexual harassment guidelines, and other required information upon employment.

86.     As a result of the Defendants violation of MGL c. 149, Defendants are liable for all actual damages, including but not limited to Ligotti's attorneys' fees and costs, but also statutory damages as proscribed under the Massachusetts.

## COUNT IX
### (Defamation Against All Defendants)

87.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

88.     Beginning on or about July 10, 2015 Defendants published both written, verbally, and electronically false and untrue statements regarding Ligotti.

89.     Specifically, Defendants made *inter alia,* the following false statements or misrepresentations regarding Ligotti and his association with the Station:

j)   That Ligotti was employed or affiliated with the Defendants after Defendants terminated his employment;

k)   That Ligotti was on medical leave or vacation after the Defendants terminated his employment;

l)   Responding to public inquiry about Ligotti's absence from the airwaves in a manner that implied that Ligotti was still employed or affiliated with the Stations;

m)   Responding or communicating with advertisers and customers that Ligotti remained affiliated with the Station after his employment was terminated, in order to continue to collect advertising revenue;

n)   Publishing billboard advertisements indicating Ligotti was employed or affiliated with the Defendants after his termination;

o)  Publishing newspaper advertisements and other media publications that listed Ligotti as employed or affiliated with the Defendants after his termination;

p)  Publishing Defendants' website or internet presence that including Ligotti as employed or affiliated with the Defendants after his termination.

q)  Making entries in Ligotti's employment files and statements to others that Ligotti engaged in sexual harassment;

r)  Made entries in Ligotti's employment files and made statements to others that Ligotti abused, harassed, or otherwise misused interns and volunteers.

90.     Defendants knew these statements were not true, or recklessly disregarded the truth of these statements.

91.     Ligotti has suffered, and will continue to suffer, harm as a result of Defendant's defamatory statements, included mental anguish, embarrassment, and harm to his reputation.

92.     Ligotti is entitled to damages, including attorneys' fees, publicist fees, and overall marketing fees to correct the false statements created or published by the Defendants.

## COUNT X
**(Breach Of Contract Against All Defendants)**

93.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

94.     A mutually binding written contract was created and executed by Ligotti and Defendants.

95.     Ligotti fully performed his duties under the contract.

96.     Defendants' breached the contract by terminating without cause, terminating without the required written notice, failing or refusing to compensate Ligotti as agreed, failing or refusing to support Ligotti with promised support, including but not limited to failure to market

brand, failing to communicate with Ligotti customers, and failing to provided trained supporting staff.

97.     Ligotti suffered monetary losses, pain and mental anguish, and will continue to suffer monetary losses, pain and mental anguish as a result of the Defendants' breach of contract.

## COUNT XI
### (Tortious Interference With Contractual Relations Against All Defendants)

98.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

99.     Ligotti maintained in the past certain and several advantageous business contracts and relations with various venders, customers, supporters, advertisers, media outlets, and listeners including but not limited to Fox News Channel; Fox Business Networks; Fox & Friends; Your World with Neil Cavuto; the Cavuto Show; Cavuto Coast to Coast; Fox Show Risk & Rewards; Mornings with Maria; the Eric Bolling Show; and Fox 25 Boston.

100.     Defendants knew of the Ligotti's advantageous business contracts and relations;

101.     Defendants took actions with the knowledge or intent, or reckless disregard for Ligotti's beneficial and advantageous business contracts and relations which interfered with said contracts or business relations.

102.     Among other things, Defendants published or communicated false statements about Ligotti and his trademark to various known business contracts or relation entities or individuals, including but not limited to Quirk Automotive, Nick Varano Restaurant Group, Tara Gearhardt of Cadillac Dealer, and it is believed various parties of the Fox News Organizations and particularly Mr. Eric Spinato, intending to obtain Ligotti's benefits for Defendants' own use, purpose or financial gain.

103.    The Defendants sought favorable treatment, positive press and news releases, and took license to repeatedly advertise an affiliation with the individuals or entities named above in paragraph 96 to heighten and increase the Defendants' reputation in the news, marketing, and overall communications industry.

104.    The Defendants have benefitted from using Ligotti's advantageous business contracts or relations without his authorization and without compensating Ligotti.

105.    As a result, Ligotti has suffered financial losses.

## COUNT XII
**(Intentional Infliction Of Emotional Distress—Against All Defendants)**

106.    Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

107.    Defendants had a duty as employer to notify Ligotti of any and all alleged violations of the employee policies or handbook or allegations of others regarding the same.

108.    Defendants failed to provide the required notices to Ligotti.

109.    Defendants first terminated Ligotti without justification, causing him emotional distress.

110.    Defendants later notified Ligotti he was not terminated, but rather that the matter would be further reviewed with "upper management".

111.    Defendants then notified Ligotti he was temporarily suspended.

112.    Approximately one (1) week later, Defendants terminated Ligotti without notice.

113.    The Defendants' actions were, intentional, unreasonable and outrageous.

114.    Ligotti suffered emotional distress as a result of Defendants' action.

115.     Defendants' actions were intentional or in reckless disregard to Ligotti and were actual or proximate cause of Ligotti's emotional distress which Defendants intended to cause by interfering with his employment status.

116.     Ligotti suffered emotional distress from the Defendants' actions.

117.     Defendants are liable for damages, including punitive damages and attorneys' fees for their conduct.

## COUNT XII
### (Negligent Infliction Of Emotional Distress—Against All Defendants)

118.     Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

119.     Defendants are communication companies.

120.     Defendants had a duty to communicate with Ligotti in a clear and decisive manner, and to communicate all alleged violations of company policies.

121.     Defendants never informed Ligotti in writing of any allegations of violating company policies.

122.     Defendants did not properly investigated allegations against Ligotti.

123.     Defendants allowed various violations of the company policies, not involving Ligotti, to continue but failed or chose not to enforce such policies.

124.     Defendants knew or should have known that their arbitrary enforcement of unknown company policies against employees, such as Ligotti, would cause emotional distress to him.

125.     Ligotti did suffer mental anguish and emotional distress from the Defendants' haphazard enforcement of alleged company policies, not published to any employee.

126.     Ligotti continues to suffer loss, emotional distress, and damage to his brand from the Defendants' outrageous conduct.

127.    Defendants are liable Ligotti for its conduct and negligent infliction of emotional distress which caused loss and damages which continue.

## COUNT XIII
### (Violations of MGL Chapter 93A)

128.    Plaintiff repeats and realleges the allegations in the above numbered paragraphs.

129.    Massachusetts General Laws Chapter 93A prohibits any unfair or deceptive acts in the course of business, commerce, or trade.

130.    Defendants' misconduct described above, including but limited to unfair and deceptive use of a Federal Trademark, the Plaintiff's likeness and image, and failure to pay proper wages and benefits constitutes unfair and deceptive acts and practices within the meaning of Chapter 93A.

131.    Defendants' business activities occurred in the course of business, trade or commerce in the Commonwealth of Massachusetts as governed by MGL c.93A.

132.    Defendants directed its misconduct at issue at causing harm to a Massachusetts individual that has been and would be suffered primarily and substantially in Massachusetts.

133.    Defendants misappropriation and use of Ligotti's trademark, image and likeness to promote their radio program after they had terminated him, rise to a level of rascality to constitute an unfair and deceptive act and practice.

134.    Defendants committed the misconduct described herein knowingly, intentionally, and willfully.

135.    Defendants are liable to Ligotti for all the damages they caused, as well as multiple damages, and an award of reasonable attorneys' fees and expenses incurred in this action.

## PRAYER FOR RELIEF

WHEREFORE, Joseph A. Ligotti, Jr. prays for the following relief:

   A.   That judgment be entered in his favor on all claims

   B.   That the Court award him compensatory and multiple damages, with pre-judgment and

        post-judgment interest, in the maximum amount allowed by law;

   C.   That the Court award him attorneys' fees, costs, expenses, and pre-judgment and post-

        judgment interest;

   D.   That the Court order all Defendants to cease and desist from any and all actions which

        may infringe upon Ligotti or his trademark THE GUY FROM BOSTON.

   E.   That the Court order all Defendants to correct any and all false statements issued against

        Ligotti or his trademark THE GUY FROM BOSTON.

   F.   That the Court order in favor of Ligotti any and all further and other relief to which he

        may be entitled at law or in equity.

### Joseph A. Ligotti, Jr. Demands a Jury on All Issues So Triable

Respectfully submitted,

Joseph A. Ligotti, Jr.,
By his legal counsel:


/s/ Chaz R. Fisher

Dated: July 22, 2016          Chaz R. Fisher (MA BAR #649059)
                              FISHER LEGAL, PA
                              217 Hanover Street #184
                              Boston, MA 02113
                              T:      617-851-1560
                              F:      561-424-8106
                              Email: Chaz@FisherLegalPA.com

# EXHIBIT "A"

Contract between Plaintiff Joseph A. Ligotti, Jr.

And Defendants

## EXHIBIT "B"

Pre-Litigation Authorization to File Private Action

Issued by Commonwealth of Massachusetts

Office of Attorney General

(Dated September 15, 2015)

# EXHIBIT "C"

LIGOTTI Demand to Defendants

for Employee file

Pursuant to MGL chapter 149, §52C

(Dated July 22, 2015)